UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/22/20

CSAIL 2018-CX12 ROUTE 9 POUGHKEEPSIE HOTEL
LLC,

                          Plaintiff,

                      - against -

SOUTH ROAD HOSPITALITY LLC; ROUTE 9 HOTEL
LLC, and BHAVANA PATEL,

                          Defendants.

Civil Action File No.
20-cv-09628-VB

## ORDER APPOINTING RECEIVER

**THIS MATTER** is before the Court on the motion by plaintiff CSAIL 2018-CX12 Route

9 Poughkeepsie Hotel LLC ("**_Plaintiff_**") for the appointment of a receiver and injunctive relief

(the "**_Motion_**"). Upon review of the Motion and the Complaint Plaintiff filed herein on November

16, 2020 (the "**_Complaint_**"), for good cause shown, the Court FINDS as follows:

1.      That this Court has subject matter jurisdiction over this matter under 28 U.S.C. §

1332;

2.      That Plaintiff's Complaint against South Road Hospitality LLC and Route 9 Hotel

LLC (collectively, "**_Borrowers_**") and Bhavana Patel ("**_Guarantor_**") demonstrates grounds for the

appointment of a receiver of the Borrowers' Assets (as defined below) pertaining to certain real

property and improvements located at the real property commonly known as 2349 South Road

(Route 9), Poughkeepsie, New York 12601 and more particularly described in **Exhibit 1** annexed

hereto (the "**_Property_**"), and that immediate and irreparable injury may result in the event a receiver

is not appointed;

3.      That Borrowers and all other named defendants received notice of the Motion; and

4.      That Borrowers are in default of their obligations under the Loan (as defined herein)

as a result of, <u>inter alia</u>, their failure to remit the monthly debt service payment amount on the April 6, 2020 payment date and each payment date monthly thereafter, their failure to comply with their cash management obligations upon receiving notice from Plaintiff that a Cash Management Trigger Event has occurred, their failure to undertake the repairs to the Property required to be completed by October 17, 2018 under the Loan, their incurrence of additional secured and unsecured debt without prior approval from Plaintiff, their breach of certain representations and warranties by allowing Sandip Patel to exercise influence and control over Borrowers and the Property, and Guarantor's breach of the minimum liquidity requirements set forth in the Guaranty of Recourse Obligations dated July 17, 2018.

Based on the foregoing FINDINGS, the Court therefore grants the relief requested in the Motion.

**IT IS HEREBY ORDERED** that Chris Neilson of Trigild IVL, LLC, a Delaware limited liability company, maintaining an office at 24 Church Street, Montclair, New Jersey 07042 (hereinafter, the "***Receiver***"), be and hereby is appointed as the receiver of Borrowers' Assets (as defined herein).

**IT IS FURTHER ORDERED** that:

1. The Receiver shall take immediate possession of, hold, secure, take charge of, preserve and protect, to the exclusion of all others, the following assets and property of the Borrowers (collectively, "***Borrowers' Assets***"):

    (a) The Property; and

    (b) All non-privileged documents, instruments, agreements and materials in Borrowers' and/or their agents' possession or control relating to the ownership, maintenance, repair, replacement, improvement, management, leasing, insuring, financing,

2

operation, preservation and protection of the Borrowers' Assets, including, without limitation, all service agreements, contracts, licenses, permits, floor plans, space plans, specifications, surveys, maps, and drawings of the Property, access codes, combinations, passwords with respect the Property, maintenance and testing records with respect to mechanical systems, fire life safety systems, plumbing systems, or other systems for which Borrowers have had maintenance or repair obligations within the two (2) years immediately preceding the date of this Order (collectively, the "*Project Records*"), to the extent that the foregoing is in the possession and/or control of Borrowers;

       (c)    All checking, savings, depository, payroll, vendor, petty cash or other accounts relating to the Property except for the ones directly held or actually controlled by Plaintiff, together with all funds contained therein (collectively, the "*Project Accounts*"), to the extent that the foregoing is in the possession or control of Borrowers;

       (d)    All rents, payments, revenues, refunds and other income from, relating to or derived from the Property received on or after the date of this Order (collectively, the "*Project Income*"), to the extent that the foregoing is in the possession and/or control of Borrowers;

       (e)    All security, utility, prepayments and other deposits received by Borrowers and/or their agents after the date of this Order and any deposits made by either Borrower to any lessor, utility provider or other service provider, in each case in connection with the ownership, operation, repair or use of the Property (collectively, the "*Project Deposits*"), to the extent that the foregoing is in the possession and/or control of Borrowers; and

       (f)    The originals, if any, in the possession or control of Borrowers, of all leases, subleases, licenses, franchise agreements, tenant notices, lease amendments, side

3

agreements, easement agreements, any applications for a Paycheck Protection Program (PPP) Loan or similar relief under the Coronavirus Aid, Relief, and Economic Security Act (CARES) or other law, and the like in Borrowers' or their agents' possession or control relating to the use or occupancy of the Property (collectively, the "*Leases*").

2.      Borrowers, their agents, employees, members, managers, officers and representatives, and any and all other contractors, persons and entities retained, hired or engaged by any Borrower (collectively, the "***Borrower Parties***") are hereby ordered (a) to immediately surrender possession and control of the Property to the Receiver; and (b) to immediately surrender possession and control of all the Borrowers' Assets in their possession and control, specifically and unless already provides, including, without limitation, all Project Records, Project Accounts, Project Income, Project Deposits, the originals of all Leases and the originals of all other contracts and agreements relating to the Property, to the Receiver.  The Receiver is hereby authorized and directed to take possession of and hold, retain, preserve, protect, use, operate, maintain and manage Borrowers' Assets, including the Property, to receive all Project Income and Project Deposits, and to execute any documents, instruments and agreements to allow the Receiver to take possession of and control and to draw checks on any and all Project Accounts.  All such documents shall be submitted to the Receiver within ten (10) business days of the date of this Order.  Any future income related to the Property shall be turned over to the Receiver immediately upon receipt.

3.      Subject to paragraph 9 of this Order, all funds in any account maintained by the Receiver pursuant to this Order shall remain collateral for the loan from Plaintiff's predecessor-in-interest to Borrowers in the original principal amount of $3,500,000.00 (the "*Loan*") pursuant to all documents, instruments and agreements evidencing, securing or relating to the Loan (collectively, the "***Loan Documents***") and shall be paid to Plaintiff upon the earliest to occur of

4

(i) the consummation of the foreclosure and sale (or acceptance of a Deed-in-Lieu of Foreclosure) of the Property; (ii) Plaintiff's sale of the Loan, (iii) payment of the Loan in full; or (iv) further Order of this Court.

4.      The Receiver is authorized to serve this Order on any of the financial institutions that maintain any Project Accounts, and any such financial institution and any other persons in active concert or participation with Borrowers is authorized to take such steps as are necessary to restrain or prevent Borrowers from withdrawing, disbursing, distributing or causing the diversion of any funds, cash, income, deposits in any Project Accounts and are authorized to immediately turn over all funds in the Project Accounts to the Borrower.  Any financial institution maintaining Project Accounts is authorized to provide to the Borrowers a complete listing of account numbers under the name of Borrowers, including accounts previously closed.

5.      Borrowers and their agents charged with operating and/or managing the Property are hereby directed to deliver to the Receiver and Plaintiff (with a copy thereof to Borrowers) the following if in their possession, custody and control, within ten (10) business days after the date of this Order:

(a)      an accounting of all Project Income, all Project Expenses (as defined below), whether paid with Project Income or by Borrowers for the benefit of the Property, all Project Accounts and all Project Deposits for the period beginning from and after April 1, 2020, to the date of this Order;

(b)      an updated rent roll dated as of the date of this Order identifying for each of the Leases: the term, space occupied, rent required to be paid, security deposit paid, any rental concessions, commencement date, expiration date, options to renew/expend/purchase, expense recovery provisions, and identifying any default or payment delinquencies thereunder;

5

(c)       monthly operating statements prepared for each calendar month for the months of January 2020 through and including the present month, and year-to-date operating statements, each of which shall include an itemization of actual (not pro forma) capital expenditures during the applicable period and each of which shall also be certified true and correct by Borrowers or their agents charged with operating the Property;

(d)       an accounting of all Project Income generated by the Property from and after April 6, 2020, to the date of this Order which was not applied to the standard and customary operating expenses of the Property or delivered to Plaintiff; and

(e)       all Project Income generated by the Property from and after the date of this Order which was not applied to the standard and customary operating expenses of the Property or delivered to Plaintiff.

Additionally, Borrowers and/or their agents charged with operating and/or managing the Property are hereby directed to deliver to the Receiver and Plaintiff promptly, but in any event within ten (10) business days after the date of this Order, an itemization of all unpaid bills and other amounts due and payable relating to the Property, together with all bills, invoices and other writings evidencing or relating thereto, which unpaid bills and other amounts due shall remain the sole obligation and responsibility of Borrowers and/or their management company, and each of the Borrowers' tax identification numbers.  Unless otherwise provided herein, the Receiver shall not be responsible for payment of any expenses (including, without limitation, for services, build-outs, or any other construction), utility bills (including without limitation, electricity, gas, water, sewage, garbage, television/cable and telephone) and unpaid payroll expenses incurred by, or for the benefit of, the Property prior to the Receiver's taking possession of the Property.  The Receiver shall request that all utilities companies and other providers of utility services, including without

6

limitation, electricity, gas, water, sewage, garbage, television/cable and telephone not discontinue any services being provided to the Property. Borrowers and their agents shall cooperate and provide assistance to the Receiver in furtherance of such requests. The Receiver is authorized to open new customer accounts with each utility that provides services to the Property, or require Borrowers to name Receiver as an authorized user of any of the existing utility accounts for the Property.

6.     The Receiver is authorized and directed to demand, collect and receive from all tenants, lessees, subtenants, sublessees, licensees, occupants or other users of all or any part of the Property (collectively, "*Tenants*") under current Leases, and all other person or persons liable therefore, all rents and other amounts and consideration now due and unpaid thereunder or hereafter to become fixed or due thereunder. All Tenants are authorized to pay the Receiver all rents and other amounts and consideration now due and unpaid under the Leases or hereafter to become fixed or due thereunder.

7.     The Receiver is hereby authorized and directed to lease, rent and license the Property on such terms and conditions as may be approved in writing by Plaintiff. No required consent of Plaintiff, nor any other provision of this Order shall render or cause, or shall be deemed to render or cause, Plaintiff to be a mortgagee in possession of the Property or otherwise subject Plaintiff to any liability under the Loan Documents or otherwise.

8.     The Receiver is authorized and directed to: (a) deposit or cause to be deposited all Project Income and all other funds and monies received by it pursuant to this Order in a segregated account in the Receiver's name and referencing the instant case, in a national, FDIC-insured bank; and (b) make available by electronic means or by means as otherwise determined by the Receiver and as allowed under this Order copies of the monthly bank statements

17426504V.2 106392/1200533

relating to such accounts for the parties' review and inspection.

      9.      Notwithstanding anything set forth in the Loan Documents to the contrary, the Receiver is authorized and directed to use the Project Income and all other funds and monies coming into the Receiver's hands pursuant to this Order (other than Project Deposits) as follows:

      (a)    <u>first</u>, to the Receiver toward payment of the Receiver's fees as set forth on **Exhibit 2** attached hereto and incorporated herein;

      (b)    <u>second</u>, to the reasonable costs and expenses incurred by the Receiver in the performance of the Receiver's duties in accordance with this Order;

      (c)    <u>third</u>, to the payment of all monthly costs, expenses, payments and other monetary obligations and liabilities of the Property, specifically including, without limitation, all real and personal property taxes and assessments and all insurance premiums relating to the Property arising, in each case, from and after the date of this Order and being reasonably necessary to hold, retain, manage, lease, operate, use, preserve and protect Borrowers' Assets in accordance with this Order (collectively, "***Project Expenses***"), <u>provided</u>, however, that the Receiver shall not expend in excess of $5,000.00 for any single repair, replacement or capital improvement without the prior written approval of Plaintiff, and <u>provided further</u>, however, that the Receiver may, only upon the prior written approval of Plaintiff, use Project Income to pay Project Expenses arising prior to the date of this Order; and

      (d)    <u>last</u>, all remaining Project Income, funds and monies (collectively, "***Excess Funds***"), except for a reasonable Receiver's reserve if approved in advance and in writing by Plaintiff, to Plaintiff for application against the outstanding expenses, interest, principal, and other amounts owed by Borrowers under the Loan Documents, with such Excess Funds to be applied by Plaintiff in such order and manner in Plaintiff's sole discretion.

8

10.     If the Receiver determines at any time, and from time to time, that the amount of Project Income then in the possession of the Receiver, or which the Receiver anticipates will be in the possession of the Receiver when required, is insufficient to pay any expenses described in paragraphs 9(a) through 9(c) of this Order, then the Receiver shall promptly notify Plaintiff thereof and of the amount of such deficit, whereupon Plaintiff shall have the right, but not the obligation, to advance to the Receiver funds to pay all or any portion of such deficit and (a) any such funds advanced by Plaintiff shall be deemed an advance to Borrowers under the Loan Documents for the protection and preservation of the Property and the other Borrowers' Assets, shall be added to the outstanding principal amount of the Loan and shall be secured by the mortgage, security title, security interest, lien and/or encumbrance of the Mortgage (as defined in the Complaint) and the Loan Documents; and (b) no such amount advanced by Plaintiff shall render or shall be deemed to render Plaintiff a mortgagee in possession of the Property or otherwise subject Plaintiff to any liability to Borrowers under the Loan Documents or otherwise.

11.     The Receiver is authorized to institute, carry on and maintain all actions, suits, proceedings and procedures necessary for: (a) the proper management, operation, preservation and protection of the Property and the Borrowers' Assets or to gain or recover possession of all or any part thereof; (b) the collection of any Project Income now due or hereafter to become due or fixed; and (c) the removal of any Tenant or other person unlawfully possessing, occupying or using any part of the Property.

12.     The Receiver is authorized to use the tax identification number of either or both of the Borrowers with respect to the Property for banking purposes.  The Receiver shall not prepare or file state or federal tax returns on behalf of Borrowers, and shall not be responsible for paying any unpaid federal or state taxes on behalf of either or both of the Borrowers.  The Receiver,

9

in consultation with the Borrowers and in consultation with and upon approval of Plaintiff, is authorized to take all necessary action to file a real property tax valuation complaint with respect to the Property and prosecute any appeals thereof and retain necessary counsel in seeking a reduction of the current tax assessment and valuation of the Property. Upon written request of the Borrowers, the Receiver will (a) provide the Borrowers with copies of pertinent correspondence and materials relating to such appeals and (b) inform the Borrowers of any related discussions and negotiations regarding such appeals. Receiver is authorized to continue any pending challenge to the real property tax valuation. The Borrowers are directed to provide all reasonably necessary assistance and execute such necessary consents (including, but not limited to, execution of any documentation as appropriate or required from the owner of the Property) at no material cost or expense to such parties, to facilitate or enable prosecution of matters seeking a reduction in the applicable property tax for the Property. Receiver is entitled to obtain, hold and disburse any tax refunds received from existing tax appeals, including any pending property tax appeal, as Project Income subject to the terms of this Order. In furtherance of the foregoing, Borrower, to the extent possible, shall direct that any such property tax refunds shall be paid directly to or at the direction of the Receiver.

13.     On or before the fifteenth (15th) day of each calendar month, the Receiver shall provide by electronic means or by means otherwise determined by the Receiver and as allowed under this Order monthly financial reports for the immediately preceding month to Plaintiff (with a copy to Borrowers) concerning the operations, income and expenses of the Property, together with a rent roll for the Property dated as of the end of each such month stating the name of each Tenant and the rent, income and other consideration to be paid by each such Tenant.

17426504V.2 106392/1200533

14.     Subject to Plaintiff's consent, the Receiver is authorized to engage accountants and attorneys, as needed in the reasonable discretion of the Receiver, to advise the Receiver with regard to financial and legal matters relating to Borrowers' Assets, to prepare financial statements and reports required under this Order, to initiate carry on and maintain such actions, suits and proceedings for and on behalf of the Receiver as may be necessary for the Receiver to carry out its duties and responsibilities under this Order and as otherwise may be reasonably required by the Receiver.  Upon the approval of Plaintiff of the reasonable fees and expenses of such accountants and attorneys, the Receiver shall be authorized to pay such fees and expenses as Project Expenses.

15.     (a)     The Receiver, with Borrowers' cooperation, shall cause all insurance policies currently insuring or otherwise relating to the Property and/or to the ownership, maintenance, repair, improvement, management, leasing, use, preservation or protection of the Property or to Borrowers' interest in the Property to be endorsed to name the Receiver and the Receiver's agents, employees and contractors as additional insureds or as a loss payees (as applicable) thereunder, all as their respective interests may appear.

(b)     Borrowers shall deliver to the Receiver and Plaintiff all material communications received by Borrowers from the issuer of any such insurance policies, including, without limitation, cancellation notices, default notices, any pending or ongoing insurance claims, potential claims that have not yet been filed, and anything that requires a response, as well as any information, notices or documentation concerning any completed or pending tax appeals related to the Property.

(c)     The Receiver is authorized to obtain from both of the Borrowers' insurance carriers the industry standard insurance protections afforded property managers of

11

similarly situated properties, including but not limited to, being named as an additional insured on any and all of the Borrowers' liability policies related to the Property and receiving from the Borrowers' liability insurance policies, property insurance policies and business interruption or rent loss insurance policies appropriate waiver of subrogation clauses pursuant to which both of the Borrowers' insurance carriers would waive all rights of subrogation against the Receiver with respect to losses payable under such policies.

(d)     The Receiver is authorized and directed to maintain in full force and effect all such insurance policies and, if and when necessary upon expiration or termination of such currently existing policies, to procure and pay the premiums for comparable insurance policies relating to the Property with such types of coverages, in such amounts and issued by such companies as are specified in the Loan Documents, or otherwise as may be approved by Plaintiff.

(e)     Except as provided herein, Borrowers and their agents are prohibited from canceling, reducing or modifying any and all insurance coverage in existence with respect to the Property that are in effect as of the date of this Order without the consent of Plaintiff and/or the Receiver.

16.     Subject to the restrictions of this Order, the Receiver is authorized to execute any documents, instruments, contracts, purchase orders and agreements from time to time necessary to permit the Receiver to obtain possession of and to control, use, operate, maintain, improve, manage, lease, insure, market, preserve and protect the Borrowers' Assets, including, without limitation, the Property and otherwise to carry out the Receiver's obligations under this Order.

17.     In holding, retaining, managing, operating, preserving and protecting the Borrowers' Assets, the Receiver shall not be bound by or otherwise subject to any existing

12

17426504V.2 106392/1200533

management agreement, any real estate listing, brokerage, sales or leasing agreement or any other obligation contract or agreement, other than the Leases, existing as of the date of this Order which relates to the ownership, use, leasing, management, maintenance, repair, preservation or operation of the Borrowers' Assets, including, without limitation, the Property.

18.     Notwithstanding anything in this Order to the contrary, Plaintiff is hereby permitted to proceed with and exercise any and all available rights and remedies under the Loan Documents, including, without limitation, exercising its rights as holder of security title to Borrowers' Assets and as a secured creditor under the Loan Documents, under Article Nine of the Uniform Commercial Code in effect in the applicable jurisdiction or under other applicable law governing such rights, by judicial or non-judicial foreclosure, power of sale or as otherwise provided under the Loan Documents, should Plaintiff so elect.  Plaintiff shall notify the Receiver of any such sale or other exercise of Plaintiff's rights and/or remedies, and the Receiver shall cooperate with Plaintiff in the consummation of any such action or actions, including, without limitation, execution of such deeds, bills of sale and other documents, instruments and agreements provided that none of such documents, instruments or agreements subject the Receiver to any personal liability.

19.     If and when foreclosure proceedings against the Property shall have been consummated, or upon execution and delivery by Borrowers and acceptance by Plaintiff of a deed in lieu of foreclosure for the Property, or upon payment of the Loan in full, and without further order of this Court, the Receiver shall within 30 days of such occurrence move the Court to be discharged and relieved from this Order and shall render a final report to the Court, to Plaintiff and to Borrowers concerning the operations of Borrowers' Assets.  The parties shall file any objections to the motion and report within fifteen (15) days of the filing of such documents.  This Court

expressly retains continuing jurisdiction over this receivership until after the rendition of the final report by the Receiver and the entry of an order discharging the Receiver.

20.     In light of the Receiver's experience in managing properties similar to the Property in this matter, the Receiver shall not be required to submit proof of a receiver's bond.

21.     In addition to the powers and instructions expressly set forth in this Order, the Receiver shall have all of the powers of a receiver which are authorized by law to hold, retain, manage, operate, preserve and protect the Property and the Borrowers' Assets and otherwise to comply with the terms of this Order.

22.     In the event that a bankruptcy case is filed by either or both of the Borrowers during the pendency of the receivership created by this Order, Borrowers must give notice of same to this Court, to all parties, and to the Receiver, within 24 hours of the bankruptcy filing.

23.     Upon receipt of notice that a bankruptcy has been filed which includes as part of the bankruptcy estate any property which is the subject of this Order, the Receiver shall do the following:

(a)     Immediately contact Plaintiff, and determine whether that party intends to move in the Bankruptcy Court for an order for both: (i) relief from the automatic stay or motion to dismiss and (ii) relief from the Receiver's obligation to turn over the Borrowers' Assets (11 U.S.C. § 543).  If Plaintiff indicates no intention to file such a motion within 10 days, then the Receiver shall immediately turn over the Borrowers' Assets (to the trustee in bankruptcy, or if one has not been appointed, then to Borrower), and otherwise comply with 11 U.S.C. § 543.

(b)     If Plaintiff notifies the Receiver of its intention to immediately seek relief from the automatic stay or file a motion to dismiss, then the Receiver is authorized to remain in possession and preserve the Borrowers' Assets pending the outcome of those motions pursuant

14

to 11 U.S.C. § 543(a).  During this period, the Receiver's authority to preserve the Borrowers' Assets is limited as follows:  The Receiver may continue to collect rents, issues, and profits.  The Receiver may make disbursements, but only those which are necessary to preserve and protect the Borrowers' Assets.  The Receiver shall not execute any new leases or other long-term contracts.  The Receiver shall do nothing that would effect a material change in circumstances of the Borrowers' Assets.

        (c)     The Receiver is authorized to retain legal counsel to assist the Receiver with the bankruptcy proceedings.

**IT IS FURTHER ORDERED**, that the Parties and all persons and entities acting in concert with any of them are hereby **ENJOINED** from:  (a) taking any action inconsistent with the terms of this Order; (b) interfering with the Receiver exercising its powers and performing its duties pursuant to this Order; (c) removing, destroying, concealing or altering any of the Borrowers' Assets, specifically including, without limitation, the Project Records; and (d) taking any action with respect to the control, use, management, preservation, repair, maintenance, leasing or operation of the Property and the Borrowers' Assets, except as otherwise permitted under this Order or upon the specific request of the Receiver.

      **SO ORDERED** this <u> 22 </u> day of <u> December </u>, 2020.

                  _____

                        United States District Judge

17426504V.2 106392/1200533

# EXHIBIT 1
## (Property Description)

ALL that certain plot piece or parcel of land, situate, lying and being in the Town of Poughkeepsie, County of Dutchess, State of New York, being more particularly bounded and described as follows:

BEGINNING at a point lying on the westerly side of South Road (New York State Route 9), said point being the northeasterly corner of lands now or formerly of Rood (6161-03-055096) and also being the southeasterly corner of the parcel herein intended to be described;

THENCE North 81 degrees 46 minutes 30 seconds West for a distance of 304.19 feet along said lands now or formerly of Rood to a point;

THENCE North 80 degrees 43 minutes 10 seconds West for a distance of 339.59 feet continuing along said lands now or formerly of Rood to a point;

THENCE North 23 degrees 13 minutes 08 seconds East for a distance of 104.54 feet partially along a chain link fence and along lands now or formerly of Liguori (6161-03-057135) to a point. Said point being located 100.46 feet southerly from an iron pipe found at the base of the corner of a chain link fence;

THENCE South 80 degrees 51 minutes 28 seconds East for a distance of 560.32 feet along lands now or formerly of Ale, LLC (6160-03-078124) and along lands now or formerly of Spring Hill of Dutchess, LLC (6160-03-078124) to a point lying on the westerly side of South Road (New York State Route 9);

THENCE South 21 degrees 38 minutes 30 seconds East for a distance of 113.32 feet along the westerly side of South Road (New York State Route 9) to the point or place of BEGINNING. .

TOGETHER with the benefits and subject to the burdens of that certain Grant of Reciprocal Easements made by and among Poughkeepsie Hotel Investors, LLC, PHI Property, LLC and Vikat P-Town, LLC, dated October 23, 2006 and recorded December 21, 2006 in the Dutchess County Clerk's Office as Document No. 02-2006-10191.

## EXHIBIT 2
### (Fee Schedule)

1. **Receivership Management**

   $250 per hour with a minimum fee of $3,000 per month

2. **Management and Accounting**

   $3,500 start-up fee plus three percent (3%) of gross revenues per month for management and accounting with a minimum management and accounting fee of $5,700 per month

3. **Construction Management**

   For capital projects, Receiver shall be paid a construction management fee of five percent (5%) of the first $250,000 of hard costs for such capital project, plus four percent (4%) of the second $250,000 of hard costs for such capital project, plus three percent (3%) of the remaining hard costs for such capital project. "Hard costs" means the actual amounts paid to the contractor, including the contractor's overhead and profit, and will exclude design consultant fees, permit fees and interest costs.